IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY, § § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 3:07-CV-1905-O |
| § | |
| TRINITY INDUSTRIES, INC., and TRINITY RAIL GROUP, LLC., § § § § | |
| Defendants. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Court's Order (doc. 31), the Motion to Dismiss of Trinity Industries, Inc. ("Trinity") (doc. 13), filed January 4, 2008, was referred to the United States Magistrate Judge for hearing, if necessary, and recommendation. Plaintiff Norfolk Southern Railway Company ("NSR") filed a response on January 28, 2008 ("Pl.'s Resp.") (doc. 15), and Trinity replied on February 15, 2008 (doc. 17).

## Background

NSR sues Trinity and Trinity Rail Group ("TRG") for, inter alia, breach of express and implied warranties under the Uniform Commercial Code ("UCC" or "Code") arising from its purchases of defective rail cars ("Autoracks") in 1998, 1999 and 2004. The Thrall Car Manufacturing Company ("Thrall") manufactured and sold the first Autoracks, and TRG manufactured and sold the 2004 Autoracks after it merged with Thrall in 2001. Trinity moves for dismissal of all of NSR's claims against it. (Def.'s Mot. Dismiss at 1.)

## Jurisdiction and Venue

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this is an action

between citizens of different states. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants' principal place of business is in this District.

**Conflict of Law**

NSR contends that Illinois law is applicable in this case, whereas Trinity asserts that Federal law governs its motion to dismiss and Texas substantive law governs the dispute between the parties. In a diversity case such as this one, federal courts must apply the choice of law rules in the forum state in which the court sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, (1941). Accordingly, Texas choice of law governs which substantive law will govern the Court's decision. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 77 (1938). The Fifth Circuit's decision in *Admiral Ins. Co. v. Brinkcraft Dev., Ltd.,* 921 F.2d 591, 592 (5th Cir. 1991) controls here. In *Admiral*, the Fifth Circuit held that Texas courts evaluate choice-of-law provisions "by two separate standards, one for transactions governed by the Uniform Commercial Code and the other for transactions governed by Texas common law." *Id.* In this case, the parties specified by contract that NSR's purchases of the Autoracks would be governed by the UCC. (Compl. ¶ 13.) However, the parties did not agree as to whether the rights and duties under the contract were to be governed by the laws of a particular state, and thus they had no choice of law agreement.[1]

Generally, under the UCC, parties are free to choose the law of any state that bears a "reasonable" relationship to the transaction to govern the rights and duties of the parties. *See* UCC § 1-105 (1). *See also Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403, 408-09 (1927); *Admiral Ins. Co.*, 921 F.2d at 593; *Woods-Tucker Leasing Corp. v. Hutcheson-Ingram Dev. Co.*, 642

---

[1] Defendants point out that the Illinois and Texas versions of the UCC are virtually identical for both substantive and limitation purposes.

F.2d 744, 752-53 (5th Cir. 1981).[2] Absent such an agreement, the Code applies to transactions bearing an appropriate relation to the Code state. UCC § 1- 105(1). The "appropriate relation" test is the only general choice-of-law provision contained in the Code. Therefore, courts must apply this test when faced with a choice-of-law problem not specifically covered by UCC § 1–105(2).

The following state relationships are evident: NSR is a corporation organized under the laws of the State of Virginia, with its principal place of business in Norfolk, Virginia. TRI is a Deleware corporation with its principal place of business in Dallas, Texas. Trinity Rail Group, LLC ("TRG") is a limited liability company, organized under the laws of Delaware. TRI is the sole member of TRG. TRG's principal place of business is in Dallas, Texas. The Autoracks were manufactured and sold by Thrall in Chicago Heights, Illinois. The purchase order incorporated all rights granted a buyer under the provisions of the Uniform Commercial Code ("UCC"). In its Complaint, NSR alleges implied and express warranty claims under the Illinois version of the UCC. NSR alleges that "all of the repairs, modifications and upgrades to Thrall built and TRG built Autoracks were administered by Thrall's and then TRG's warranty departments." (Compl. ¶ 67.)

The fact that a suit is brought in a state, standing alone, does not make it "appropriate" to apply the substantive law of that jurisdiction. *See* UCC § 1-105, Official Code Cmt, Par. 2. It appears that although TRG's principal place of business is in Dallas, Texas, its headquarters is in Illinois, where its manufacturing takes place. The record at this nascent stage of the proceedings

---

[2]In 2001, UCC Article 1 was extensively revised. *See* UCC § 1-301, Official Code Cmt., Par. 1. Former UCC § 1-105 was replaced by Part 3, Territorial Applicability and General Rules, UCC §§ 1-301 et. seq.. *Id.* Revised Article 1 provides, with respect to all transactions, that an agreement by the parties to use the law of any state is effective, *regardless* of whether the transaction bears a reasonable relation to the state. *See* UCC § 1-301. Thus, the revised "draft affords greater party autonomy than former Section 1-105." *Id.* at Official Code Cmt, Par. 1.

does not give enough information to permit this Court to determine whether Texas law or Illinois law should govern the questions involved. Accordingly, for purposes of Trinity's Motion to Dismiss, the Court will consider both Texas law and Illinois law.

## **Standard of Review**

To prevail on a motion to dismiss on an ordinary claim under Rule 12(b)(6), a defendant must show that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *See Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atl.*, 127 S. Ct. at 1964-65 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *See Vanderbrook.*, 495 F.3d at 205 (internal quotation marks omitted) (quoting *Bell Atl.*, 127 S. Ct. at 1965).

Nevertheless, FED. R. CIV. P. 9(b) "imposes a heightened level of pleading for fraud claims." *See Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *See* FED. R. CIV. P. 9(b). *See also Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). In particular, the pleadings should "specify the statements contended to be fraudulent, identify the speaker, state

4

when and where the statements were made, and explain why the statements were fraudulent." *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997). The Rule is not intended "to procure punctilious detail," and the particularity demanded by Rule 9(b) differs with the facts of each case. *See Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.). "Rule 9(b) requires a plaintiff to allege the existence of facts sufficient to warrant the pleaded conclusion that fraud has occurred." *See In re Haber Oil Co.*, 12 F.3d 426, 439 (5th Cir. 1994). Rule 9(b) must be "read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *See Steiner*, 734 F. Supp. at 273 (quoting *Landry v. Air Line Pilots Ass'n Int'l*, 892 F.2d 1238, 1264 (5th Cir. 1990) (some internal quotation marks omitted). Thus Rule 9(b) must be viewed in light of Rule 8(a)'s goal of "simple, concise, and direct" pleadings. *See Williams*, 112 F.3d at 178 (quoting Rule 8(e)(1)).

## **Analysis**

Trinity asserts that NSR fails to state a claim against it because: (1) NSR cannot impute successor liability to Trinity since NSR's factual assertions establish that Trinity is *not* the corporate successor to Thrall, and (2) NSR failed to plead with sufficient particularity facts to show that the corporate veil should be pierced. (Def.'s Mot. Dismiss at 5.) Trinity asserts that NSR's failure to present any legitimate factual assertions or legal arguments regarding successor liability and corporate veil-piercing warrant dismissal of all claims against Trinity. (*Id.* at 10.)

NSR asserts that it is only obligated to plead facts which are sufficient to provide Trinity with notice of its claims. (Pl.'s Resp. at 2.) NSR argues that Trinity understands that NSR seeks to impute Thrall's and TRG's acts and omissions to Trinity. (*Id.* at 3.) Thus, NSR alleges the Court

5

must deny Trinity's motion to dismiss because it has met its burden in providing notice. (*Id.*)

## Successor Liability

NSR asserts TRG and Trinity are successors in interest to all obligations and liabilities of Thrall because Thrall merged with TRG and because TRG is a subsidiary of Trinity. (Def.'s Mot. Dismiss at 2.) Trinity argues that this only indicates that TRG, alone, is the potential successor of Thrall and thus, NSR fails to show how Trinity acquired the liabilities of Thrall from this merger because Trinity did not actually merge with Thrall. (*Id.*) Therefore, Trinity argues that NSR fails to state a claim against Trinity warranting relief under successor liability.

**A.    Texas Law Analysis**

Well-settled law supports the successor *non*-liability rule of asset acquisition pursuant to TEX. BUS. CORP. ACT art. 5.10(B)(2). *See McKee v. Am. Transfer & Storage*, 946 F. Supp. 485, 487 (N.D. Tex. 1997) (holding that "Texas law does not generally recognize successor liability for subsequent purchases of corporate assets.").[3] Effective September 1, 1993, Article 5.10(B) of the Texas Business Corporation Act establishes that:

> A disposition of any, all, or substantially all, of the property and assets of a corporation, whether or not it requires the special authorization of the shareholders of the corporation, effected under Section A of this article or under Article 5.09 of this Act or otherwise:

---

[3]*See also Sitaram v. Aetna U.S. Healthcare of N. Tex., Inc.*, 152 S.W.3d 817, 828 (Tex. App.–Texarkana 2004) (holding there was no successor in interest when the acquiring corporation did not expressly agree to assume the liabilities of the party to the agreement because "'successor' has a specialized meaning beyond simple acquisition"); *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768 (Tex. App.–Houston [1st Dist.] 2004) (finding no successor liability because there was no express assumption by the successor to acquire the liability of the predecessor); *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 135 (Tex. App.–Houston [1st Dist.] 2000) (holding that successor was entitled to summary judgment because it was not either expressly nor impliedly liable for its predecessor's contingent torts).

(1) is not considered to be a merger or conversion pursuant to this Act or otherwise; and

(2) except as otherwise expressly provided by another statute, does not make the acquiring corporation, foreign corporation, or other entity responsible or liable for any liability or obligation of the selling corporation that the acquiring corporation, foreign corporation, or other entity did not expressly assume.

Taking the facts most favorably to NSR, it has not stated a claim against Trinity for successor liability. First, TRG merged with Thrall, not Trinity. *See* TEX. BUS. CORP. ACT art. 5.10(B)(1). Second, there is no Texas authority indicating that a parent company can be liable as a successor in interest pursuant to TEX. BUS. CORP. ACT art. 5.10(B)(1), when it is the parent company's subsidiary, and not the parent company itself, that merges with the predecessor company. *See* TEX. BUS. CORP. ACT art.1.02(A)(18) (defining "merger").

Under NSR's allegations, Trinity is not subject to successor liability. *Id.* Further, NSR does not claim that Trinity *expressly* assumed liability for Thrall's liabilities or obligations when TRG and Thrall merged. *See* TEX. BUS. CORP. ACT art. 5.10(B)(2) (acquiring liability if "expressly assumed"). Under Texas law, Trinity is entitled to dismissal.

**B.** <u>**Illinois Law Analysis**</u>

The general rule for successor liability in Illinois is that when one corporation sells its assets to another corporation, the successor corporation does *not* become liable for the debts and liabilities of the seller merely by reason of succession. *See Ruiz v. Blentech Corp.*, 89 F.3d 320, 324 (7th Cir. 1996). "Illinois recognizes four exceptions to the general nonliability rule for successors where: (1) there is an express or implied agreement of assumption (2) the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) the purchaser is merely a

7

continuation of the seller; or (4) the transaction is for the fraudulent purpose of escaping liability for the sellers obligations." *Id.*[4]

NSR claims that Trinity is liable as successor to Thrall under the second exception. *Id.* However, Trinity did not actually merge with Thrall. NSR fails to state a claim to relief that is plausible on its face. Because Trinity has shown that plaintiff can prove no set of facts in support of its claim which would entitle it to relief, Trinity's motion to dismiss NSR's claim for successor liability should be granted.

## **Corporate Veil-Piercing**

Trinity next moves to dismiss NSR's claims because NSR has failed to plead a veil-piercing claim, which requires a particularized pleading of fraud under Rule 9(b). (Def.'s Mot. Dismiss at 4.) NSR's single factual allegation in its Complaint, that Trinity "owns and operates" TRG, even if taken as true, is insufficient to support a veil-piercing theory. (*Id.* at 6.) Trinity asserts that NSR's failure to allege any relevant facts and failure to plead with sufficient particularity its corporate veil-piercing claim warrants dismissal. (*Id.* at 4, 6, 7.) Trinity argues that the Court should deny NSR's request to amend its complaint because the amended complaint would still fail to state a claim upon which relief could be granted. (*Id.*)

**A.    Texas Law**

Generally, a parent company and its subsidiary are separate legal entities. *See Gentry v.*

---

[4]Texas does not recognize the second and third exceptions. *See C.M.Asfahl Agency*, 135 S.W.3d at 792 n.19 ("[L]egislature eliminated the three exceptions to the majority rule of successor non-liability under the Third Restatement of the Law of Torts for Products Liability, as follows: the 'de facto merger' doctrine, the 'mere continuation' theory, and the 'product line' theory," in enacting TEX. BUS. CORP. ACT. art. 5.10(B)(2)). *See also Lockheed Martin Corp.*, 16 S.W.3d at 134-35 (citing and distinguishing RESTATEMENT (THIRD) OF THE LAW OF TORTS FOR PRODUCTS LIABILITY § 12 (1998)).

8

*Credit Plan Corp.*, 528 S.W.2d 571, 573 (Tex. 1975); *Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 337 (Tex. 1968). Because the parent corporation is merely a shareholder of its subsidiary, the parent corporation generally would not be held liable for the obligations of its subsidiary. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (recognizing as hornbook law the proposition that "the exercise of the 'control' which stock ownership give to the stockholders . . . will not create liability beyond the assets of the subsidiary."). *See also Menetti v. Chavers*, 974 S.W.2d 168, 171 (Tex. App.–San Antonio 1998, no pet.) (stating that "the corporate structure is designed to shield shareholders from [individual] liability."). However, under certain exceptions to the general rule, courts may disregard this corporate fiction and pierce the veneer of formality separating the parent from its subsidiary. *See Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1987), *superseded by statute*, TEX. BUS. CORP. ACT. art. 2.21, *as recognized in Willis v. Donnelly*, 199 S.W.3d 262, 272 n.12 (Tex. 2006).

First, under the "alter ego doctrine" the corporate veil may be pierced when (1) there is such unity between a corporation and individual that the separateness of the corporation has ceased and (2) holding only the corporation liable would result in injustice. *See Gentry*, 528 S.W.2d at 573. *See also First Nat'l Bank in Canyon v. Gamble*, 132 S.W.2d 100, 103 (1939).[5] The rationale is "if the shareholders themselves disregard the separation of the corporate enterprise, the law will also

---

[5]"Many Texas cases have blurred the distinction between alter ego and the other bases for disregarding the corporate fiction and treated alter ego as a synonym for the entire doctrine of disregarding the corporate fiction." *See Castleberry*, 721 S.W.2d at 271. However, "alter ego is only one of the bases for disregarding the corporate fiction." *Id.* The Fifth Circuit has identified three theoretical "strands" that justify piercing of the corporate veil. *See W. Horizon Drilling v. Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994); *Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1288-89 (5th Cir. 1989); *Pan E. Exploration Co. v. Hufo Oils*, 855 F.2d 1105, 1131-33 (5th Cir. 1988). These three strands include the "alter ego theory," the "illegal purpose" doctrine, and the "sham to perpetrate a fraud" theory. *Id.*

9

disregard it so far as necessary to protect individual and corporate creditors." *See Castleberry*, 721 S.W.2d at 272. Thus, the alter ego doctrine may be used to disregard the corporation fiction when a corporation is organized and operated as a mere tool or business conduit of another corporation *and* adherence to the fiction of corporate separateness would, sanction a fraud or foster an injustice. *Id.*

Because Texas law presumes that two separate corporations are distinct legal entities, a subsidiary corporation will not be regarded as the alter ego of its parent corporation "merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders." *See Gentry*, 528 S..W.2d at 573. To fuse a parent and subsidiary for jurisdictional purposes, the plaintiff must prove that the parent controls the internal business operations and affairs of the subsidiary. *See BMC Software Belg., N.V. v. Marchland*, 83 S.W.3d 789, 799 (Tex. 2002); *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175-76 (Tex. 2007). "The evidence must show that the entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *BMC Software Belg.*, 83 S.W.3d at 799.

Generally, in the context of a case involving a parent company and its subsidiary, Texas courts "will not disregard the corporate fiction and hold a corporation liable for the obligations of its subsidiary unless it appears that the corporate entity of the subsidiary is being used as a sham to perpetrate a fraud, avoid liability, or avoid the effect of a statute, or in other exceptional circumstances." *See Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374-75 (Tex. 1984). *See, e.g., Magic House AB v. Shelton Beverage L.P.*, 99 S.W.3d 903, 911 (Tex. App.–Dallas 2003, no pet.) (holding distributor was not manufacturer's alter ego absent evidence that nonresident corporate

10

manufacturer had control over national distributor of its products); *Morris v. Scotsman Indus., Inc.*, 106 S.W.3d 751, 754-56 (Tex. App.–Fort Worth 2003, no pet.) (holding subsidiary was not alter ego when parent corporation did not have a right to control and did not control the safety and security policies at subsidiary's workplace, played no role in hiring or training the subsidiary's employees, and did not participate in the day-to-day management of the subsidiary).

A parent company is also liable "for the actions of its instrumentality in the name of equity when the corporate form is used as a 'sham to perpetuate a fraud.'" *See Bridas S.A.P.I.C. v. Gov't of Turkm.*, 447 F.3d 411, 416 (5th Cir. 2006) (citing *Pan E. Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1132 (5th Cir. 1988)). Therefore, to hold the parent corporation liable under the alter ego theory, the claimant must show that the parent used the subsidiary to perpetuate an actual fraud. *See Menetti*, 974 S.W.2d at 173. Further, courts may pierce the corporate veil when the corporate fiction is used for illegal or improper actions.[6]

NSR has pled that it can pierce the corporate veil and implicate Trinity because Trinity "owns and operates" TRG. (Pl.'s Resp. at 5.) Even if the Court assumes this fact to be true, this fact alone is insufficient to pierce the corporate veil. *See BMC Software Belg.*, 83 S.W.3d at 799 ( "[T]he degree of control the parent exercises must be greater than that normally associated with common ownership and directorship."). However, NSR points to additional facts that are totally within Trinity's knowledge which might, after discovery, support a veil-piercing theory. (Pl.'s Resp. at 6.) Accordingly, the District Court should allow NSR to amend its complaint if it has sufficient facts

---

[6]*See Castleberry*, 721 S.W.2d at 272 ("Specifically, we disregard the corporate fiction . . . where the corporate fiction is resorted as a means of evading an existing legal obligation; where the corporate fiction is employed to achieve or perpetrate a monopoly; where the corporate fiction is used to circumvent a statute; and where the corporate fiction is relied upon as a protection of crime or to justify wrong.").

11

to plead fraud in the manner that Rule 9(b) requires. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.") (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

**B.     Illinois Law**

Like Texas, as a general rule, a parent company is not liable for the acts of its subsidiary in Illinois. *See Chicago Florsheim Shoe Store Co. v. Cluett, Peabody & Co.*, 826 F.2d 725, 728 (7th Cir. 1987). Under Illinois law, two elements must be shown to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *See Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985) (citing *Main Bank of Chicago v. Baker*, 420 N.E.2d 251, 255 (2d Dist. 1981) (other citations omitted)). Illinois courts consider a number of factors when determining whether "unity of interest" exists including:

> inadequate capitalization; failure to issue stock; failure to observe corporate formalities; nonpayment of dividends; insolvency of the debtor corporation; nonfunctioning of the other officers or directors; absence of corporate records; commingling of funds; diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; failure to maintain arm's length relationships among related entities . . . .

*See Laborers' Pension Fund v. Lay-Com, Inc.*, 455 F. Supp. 2d 773, 783 (N.D. Ill. 2006). Plaintiff must show "something more than the mere prospect of an unsatisfied judgment," such as "some element of unfairness . . . or the existence of a compelling public interest" when claiming fraud or

injustice. *See Van Dorn*, 753 F.2d at 571. Courts have found the second element satisfied when failure to pierce the veil would:

> unfairly enrich one of the parties; allow a parent corporation, that had created a subsidiary's liabilities and was the cause of the subsidiary's inability to meet them, to escape responsibility; . . . or uphold a corporate arrangement to keep assets in a liability-free corporation while placing liabilities on an asset free corporation.

*See Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1390 (7th Cir. 1994). The doctrine of separate corporate identity is primary. *See Chicago Florsheim Store.*, 826 F.2d at 728. The exception to the general rule is not favored by Illinois courts and is applied stringently. *Id*.

NSR's conclusory allegation that Trinity is liable for TRG's acts simply because it "owns and controls" TRG is insufficient as a matter of law to support a corporate veil-piercing claim. *See Bright v. Roadway*, 846 F. Supp. 693, 700 (N.D. Ill. 1994) (holding plaintiff's conclusory allegation that defendant parent company was liable merely because it owned and controlled the subsidiary company was insufficient to state a veil-piercing claim). Further, the fact that Trinity and NRG share the same corporate address and share common directors does not sufficiently show a cause of action against Trinity on a veil-piercing theory under Illinois law. *See Hornsby v. Hornsby's Stores, Inc.*, 734 F. Supp. 302, 308 (N.D. Ill. 1990) (holding allegations were insufficient to state a claim against a parent company for the acts of its subsidiary even though the two corporations shared directors, office space and office staff).

However, the claimant is not required to plead all the elements and facts to establish grounds for piercing the corporate veil. *See Grabel/Los Angeles Movers, Inc. v. Johnson*, 2006 U.S. Dist. LEXIS 8273 (N.D. Ill. Mar. 1, 2006). Illinois courts only inquire "whether relief is possible under any set of facts that could be established consistent with the allegations." *See Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992). For example, Illinois courts have denied motions to

dismiss even though plaintiff's allegations were unspecific or sparse, when the allegations revealed circumstances such that "adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences." *See People of the State of Illinois v. V & M Indus, Inc.*, 700 N.E.2d 746, 750-51 (Ill. App. 1998). *See, e.g., CMS Shipping, Inc. v. Global Freight, Inc.*, 2006 U.S. Dist. LEXIS 55781 (N.D. Ill. July 26, 2006) (denying defendant's motion to dismiss when plaintiff's complaint indicated that the corporation was undercapitalized and functioned as a facade for the controlling shareholder).

Taking NSR's allegations as true, NSR does not allege any facts indicating an injustice or fraud. *See Van Dorn Co.*, 753 F.2d at 569-70. NSR simply argues "they have sufficiently apprised the defendants of their legal theory of piercing the corporate veil." *See All Meat & Poultry Prods.*, 470 F. Supp.2d 823, 827 (N.D. Ill. 2007). NSR fails to give sufficient notice as to the grounds upon which its corporate veil piercing theory rests. *See EEOC v. Concentra Health Servs.*, 496 F.3d 773, 779 (7th Cir. 2007) (quoting *Bell Atl.*, 127 S. Ct. at 1964.) ("[A] complaint need only be sufficiently detailed to 'give the defendant fair notice of what the . . . claim is *and* the grounds upon which it rests.'") (emphasis added).

NSR has requested leave to amend its complaint to plead additional facts that would state a claim for corporate veil-piercing. (Pl.'s Resp. at 6.) Accordingly, the Court recommends that Trinity's Motion to Dismiss be granted without prejudice, with leave for NSR to amend the Complaint.

## **RECOMMENDATION**

The District Court should grant Trinity's Motion to Dismiss with respect to successor liability and dismiss with prejudice NSR's claim against Trinity for successor liability. The District

Court should grant Trinity's Motion to Dismiss with respect to corporate veil piercing and dismiss without prejudice NSR's claim against Trinity for veil-piercing, with leave for NSR to amend its Complaint.    SO RECOMMENDED this 2nd day of September, 2008.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE